**CITY OF PEPPER PIKE, Appellant,**

**v.**

**PARKER, Appellee.**

[Cite as *Pepper Pike v. Parker* (2001), 145 Ohio App.3d 17.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78371.

Decided July 5, 2001.

*Walter & Haverfield L.L.P., Jonathan D. Greenberg, Christopher L. Gibbon* and *William R. Hanna,* for appellant.

*Milton A. Kramer Law Clinic* and *Judith P. Lipton,* for appellee.

MICHAEL J. CORRIGAN, Judge.

The Shaker Heights Municipal Court granted defendant James W. Parker's motion to suppress evidence of drunk driving, driving while under suspension, and failure to control on grounds that the arresting officer lacked probable cause to stop defendant's vehicle. The city of Pepper Pike appeals, and the issue is whether the police officer had a reasonable suspicion of criminal activity sufficient to justify the stop.

The arresting officer testified that he first observed defendant driving in Lander Circle at 1:46 a.m. Defendant was braking constantly and traveling only ten miles per hour in a twenty-five-mile-per-hour zone. The officer thought this indicated that the driver did not know where he was going. Defendant made a very slow, wide turn. When asked if defendant entered the southbound lane, the officer responded, "I would say right between both." The officer agreed that this act alone was not enough to pull the car over.

The officer then followed defendant for three-quarters of a mile. During that time, defendant's speed never rose above ten miles per hour, sometimes dropping to only five miles per hour. Four times the car went back and forth within its lane, and twice defendant rode onto the yellow lane divider. At no time, however, did the car cross the center line.

The officer expressed four concerns that justified him stopping the car: (1) that the driver was lost, (2) that the driver had a medical condition, (3) that the driver was under the influence, and (4) that the driver was tired and in unknown surroundings. When the officer pulled defendant over, he noticed a faint to moderate odor of alcohol. Defendant's eyes were glassy, he was mumbling, and he had slurred speech. The officer discovered that defendant was driving while under a twelve-point suspension. Defendant refused to perform field sobriety tests and further refused to take a breathalyzer test.

The trial court's findings of fact state that the arresting officer "observed Mr. Parker continue to drive slowly and ride his brakes. He also observed Mr. Parker drift from right to left four times within his lane of travel. On two occasions, Mr. Parker's car rode on the yellow dividing line. No portion of Mr. Parker's car crossed this yellow line." The court also found that there was no evidence concerning how long or what distance defendant's car drifted over the line.

After making an exhaustive review of the cases in this area, the trial court made the following conclusion of law:

"The court believes that Officer Gibson lacked a reasonable and articulable suspicion to believe that Mr. Parker operated his vehicle without reasonable control. Based upon the totality of facts in evidence, the observations that Mr. Parker drifted within his lane of travel several times and twice touched the yellow dividing line, without any details as to how long the car rode on the dividing line, do not support a reasonable suspicion that a traffic law was violated. This conclusion is solidified by the officer's acknowledgment that Mr. Parker did not cross the yellow line, did not strike the curb on the right side of his lane, and never left his lane of travel. Further, driving slowly and riding the brakes on Lander Circle are facts too innocuous, under the totality of the circumstances, to

add any support to the officer's belief. This conclusion is compelled by the decisions reviewed herein."

■ The primary issue is whether the facts presented constitute a reasonable suspicion sufficient to justify stopping defendant.

In *State v. Williams* (1990), 51 Ohio St.3d 58, 60–61, 554 N.E.2d 108, 111, the Ohio Supreme Court stated: "The standard for reviewing such police conduct is an objective one: 'would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?' That is, '[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" (Citations and internal quotations omitted.)

The arresting officer testified to the following articulable facts: defendant made a wide turn as he exited Lander Circle, he drove only five to ten miles per hour in a twenty-five-mile-per-hour speed zone, and, in the span of three-fourths of a mile, he weaved twice within his own lane and twice touched the center line of the two-lane road. While none of these factors, standing alone, constituted a criminal offense, collectively, the circumstances surrounding defendant's weaving within the lane, his slow rate of speed, his wide turn onto Lander Road, and the lateness of the hour were more than sufficient to give the arresting officer a reasonable suspicion of illegality.

■ In reaching this conclusion, we note that *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, does not require proof that a crime has occurred; it demands only such facts as are necessary to support a reasonable suspicion that a crime may have occurred. See *Illinois v. Wardlow* (2000), 528 U.S. 119, 123, 120 S.Ct. 673, 675, 145 L.Ed.2d 570, 576. The purpose of a *Terry* stop is not to accuse, but to investigate. Even facts that might be given an innocent construction will support the decision to detain an individual momentarily for questioning, so long as one may rationally infer from the totality of the circumstances—the whole picture, *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 694–695, 66 L.Ed.2d 621, 628–629, that the person may be involved in criminal activity. See *State v. Camp* (Jan. 25, 1999), Tuscarawas App. No. 1998CA00121A, unreported, 1999 WL 34690 (finding that probable cause is frequently a sequential consideration and evidence that driver made an erratic turn, proceeded to drive only thirty-five miles per hour in a forty-five-mile-per-hour zone, and crossed the right edge line for approximately one-fourth of a mile was sufficient to justify stop). The trial court erred by granting the motion to suppress. The assigned error is sustained.

The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JAMES J. SWEENEY, P.J., concurs.

DYKE, J., dissents.

DYKE, Judge, dissenting.

I respectfully dissent from the decision to reverse and remand this matter for further proceedings.

Stopping an automobile and detaining the occupants constitutes a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. Thus, such stops must be reasonable in order to to safeguard the privacy and security of individuals against arbitrary invasions. *Id.* A brief investigative stop is permitted if there is at least an articulable and reasonable suspicion that a motorist is subject to seizure for violation of law. *Id.* The officer does not need probable cause for an arrest in order to make an investigative stop but needs only specific and articulable facts with which to warrant the officer's further investigation. *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 110, 534 N.E.2d 906, 908.

A court reviewing such a stop is to view the stop in light of the totality of surrounding circumstances, giving due weight to the officer's experience and training. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271, 1273. Reasonable suspicion does not always result from the observation of a minor deviation from a normal driving pattern in the absence of other articulable facts justifying a stop. See *State v. Brite* (1997), 120 Ohio App.3d 517, 698 N.E.2d 478 (investigatory stop improper where the defendant drove over the right-hand edge line of the road on two occasions in the span of a mile); *State v. Gullett* (1992), 78 Ohio App.3d 138, 604 N.E.2d 176 (insufficient articulable facts to justify the stop where the defendant crossed the white line of the lane of travel, veered back, executed a sharp turn, then again crossed the edge line); *State v. Drogi* (1994), 96 Ohio App.3d 466, 645 N.E.2d 153 (a total of two instances where the defendant drifted in his lane of travel then crossed the right line insufficient to justify the stop of defendant's vehicle).

In this instance, Officer Gibson testified that he observed defendant's vehicle going slowly and braking. The officer testified that it appeared that defendant was uncertain as to his surroundings. The officer then followed defendant for one-half to three-quarters of a mile and he observed him make a wide turn, then

weave within his lane four times. I would conclude that this does not constitute reasonable suspicion to justify the stop. The officer stated that the slow movement that he initially observed was indicative that defendant was not certain where he was going, which is, as the trial court concluded, innocuous. The subsequent wide turn and weaving were trivial infractions that did not justify the stop. I would, therefore, affirm the judgment of the trial court, which granted defendant's motion to suppress.